# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MUYIDEEN NURENI, | * |
| Plaintiff, | * |
| v. | * Civil Action No. ELH-18-2069 |
| STATE OF MARYLAND, WARDEN RICKY FOXWELL, | * |
| | * |
| Defendants. | * |
| | * |

***

## **MEMORANDUM OPINION**

This case arises from an isolated error that occurred on October 25, 2017, at Eastern Correctional Institution ("ECI"), a prison in Westover, Maryland. The error resulted in the provision of sausages to inmates at breakfast that contained 2% or less of pork stock.

At the time of the incident, plaintiff Muyideen Nureni was an inmate housed at ECI. *See* ECF 1. He brings this civil action pursuant to 42 U.S.C. § 1983 against the State of Maryland and Ricky Foxwell, the Warden at ECI at that time. *Id.* Claiming that consumption of pork is against his religion, plaintiff seeks compensatory and punitive damages for defendants' alleged violation of his First Amendment rights. *Id.* at 2.

Defendants have moved to dismiss or, in the alternative, for summary judgment. ECF 15. Their motion is supported by a memorandum of law (ECF 15-1) (collectively, the "Motion") and several exhibits. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court informed plaintiff that the failure to file a response in opposition to the defendants' Motion could result in dismissal of his Complaint. ECF 16. Plaintiff filed a response in opposition to the defendants' Motion. ECF 20. Defendants did not reply.

Upon review of the record, exhibits, and applicable law, the court deems a hearing

unnecessary. *See* Local Rule 105.6 (D. Md. 2018). Defendant State of Maryland shall be dismissed from suit. Defendants' Motion shall be construed as a motion for summary judgment as to Foxwell and shall be granted.

## I. Factual Background

Plaintiff states that on October 25, 2017, while incarcerated at ECI, he ate breakfast consisting of what he believed to be maple sausage links. ECF 1 at 1. Thereafter, plaintiff discovered that the sausages served at breakfast contained pork. *Id.* Plaintiff claims that he is a Christian and that consuming pork is against his religion. *Id.* at 1-2. As a result of eating the sausages, plaintiff claims that he suffered psychologically, mentally, and spiritually. *Id.* at 2.

Robert Troxell, Sr. was the Correctional Dietary Manager at ECI during the relevant time. ECF 15-3 (Troxell Declaration), ¶1. In his Declaration, Troxell avers that plaintiff never submitted any written request for a non-pork diet on the basis of his faith. *Id.* at ¶5. To Troxell's knowledge, during the 27 years of his tenure in the Correctional Dietary department, no inmate has ever requested a non-pork diet on the basis of being a Christian. *Id.*

According to ECI's case management system, plaintiff indicated on July 20, 2016, that his religious affiliation was "Protestant Nondenominational Christian." ECF 15-2 at 23. During plaintiff's incarceration at ECI, he signed and dated a Religious Preference Registration form that included a staff witness signature, informing ECI staff of the faith group that he intended to practice. *Id.* at 22. On a form dated May 17, 2017, plaintiff selected "Rastafarian" as his religion. *Id.* In his response opposing defendants' Motion, plaintiff states that he practices "the same Christian beliefs under Rasterfarian [sic]" ECF 20 at 1.

Troxell maintains that, in accordance with Maryland Department of Public Safety and Correctional Services ("DPSCS") policy, "no prison inmate food items of any kind may contain

2

any pork or pork by-products out of general consideration of established Muslim and Jewish religious dietary restrictions, which forbid consumption of any pork[.]" ECF 15-3 at ¶3. Moreover, "[c]ertified Halal and Kosher diets are provided for Muslim and Jewish inmates, respectively, on the basis of widely recognized and established Muslim and Jewish religious convictions." *Id.* at ¶4. However, those religious diets are "only provided to inmates who submit a written dietary request and have been approved by the prison chaplain once the chaplain has interviewed them individually to ascertain the veracity and sincerity of their respective religious faiths to warrant accommodation of a religious diet rather than the general population meals." *Id.*

Notably, at the relevant time, the DPSCS did not order sausages with any pork. An invoice dated September 27, 2017, reflects that ECI contracted to purchase 192 cases of turkey maple sausage links from a commercial food vendor. ECF 15-2 at 2. Of import here, the invoice expressly states, in part: "Sausage, Turkey Maple Link . . . ." *Id.* Payment was due by October 27, 2017. *Id.* And, the purchase requisition (*id.* at 3) indicates an "Item Description" of "Turkey Sausage Links." Further, the "Receiving Report" describes the "articles" as "Turkey Sausage links." *Id.* at 4.

Also of relevance, all commercial vendors supplying inmate food items to ECI are explicitly informed prior to sale that any food items must not contain any pork or pork by-products, in accordance with DPSCS policies. *See* ECF 15-3 at ¶6. Troxell avers that ECI relies on the commercial food vendors to comply with this policy with respect to the inmate food items supplied to ECI. *Id.* Troxell also expects ECI staff to comply with the Directives and ECI policies regarding inmate meals. *Id.* at ¶7. However, Troxell does not dispute that "sausage that contained 2% or less dehydrated pork stock" was served to ECI inmates on October 25, 2017. *See* ECF 15-1 at 3.[1]

---

[1] Eggs were available upon request. ECF 15-2 at 21.

On November 22, 2017, plaintiff filed ARP complaint ECI-3059-17. ECF 15-2 at 5. Plaintiff asserted that by serving pork at breakfast on the date in question, ECI staff violated his First Amendment right to practice his religion. *Id.* Plaintiff also stated that "pork consumption is and has always been against my religion as it has and always been an unclean food." *Id.* Therefore, he sought, *inter alia*, monetary compensation. *Id.*

When responding to an ECI inmate's ARP complaint, defendant Foxwell relies on the review and investigation by the staff. ECF 15-4 (Foxwell Declaration), ¶4. During the investigation of plaintiff's ARP complaint by ECI staff, a correctional officer assigned to the "feed up" meal duty for October 25, 2017, provided a statement indicating that, to the officer's knowledge, no pork products were purchased or served in the DOC [Division of Correction], that the food item in question was turkey sausage, and that eggs were available if any inmate wanted a substitute. ECF 15-2 at 21.

On January 5, 2018, Foxwell provided the following response to plaintiff's ARP complaint, *id.* at 5:

> Your request for Administrative Remedy has been investigated and is Meritorious in Part; upon review of reports from staff and supporting documentation, it has been determined that sausage that contained 2% or less dehydrated pork stock on 10/25/17. This was served as an oversite [sic] by multiple departments and the vendor. This product has been pulled and will not be served in the future. Eating of pork products does not cause health issues. Staff has been advised to check labels prior to serving.

Plaintiff appealed his ARP complaint, stating he was affected "spiritually and mentally." *Id.* at 14. The Commissioner of Correction dismissed the appeal, stating: "You were advised in the warden's response that staff has been advised to check labels prior to serving." *Id.* at 13. The Commissioner also advised plaintiff that the remedy he sought would not be provided. *Id.*

4

## II. Standard of Review

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed Appx. 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material

"is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. Appx. 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d

6

866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x. at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. Appx. at 638.

Plaintiff has not filed an affidavit under Rule 56(d).  Moreover, I am satisfied that it is appropriate to address the defendants' Motion as one for summary judgment, as this will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004).  And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639,

645 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the

moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

### III. Discussion

In their Motion, defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(1) and (6), or summary judgment under Rule 56. They argue that (1) the State of Maryland is immune from suit in federal court under the Eleventh Amendment; (2) Foxwell is immune from a suit in his official capacity, pursuant to the Eleventh Amendment; (3) there are no facts alleged against Foxwell; (4) Foxwell is entitled to qualified immunity; (5) Foxwell did not personally participate in the alleged wrongdoing; (6) no First Amendment violation occurred; (7) plaintiff is barred from recovery of damages for emotional harm in the absence of physical injury; (8) no due process violation occurred based on a violation of DPSCS's policies and procedures; and (9) plaintiff has no constitutional right to the criminal prosecution of defendants. ECF 15-1.

**1. Eleventh Amendment**

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any Foreign State." The Eleventh Amendment did not create sovereign immunity. Rather, it preserved the sovereign immunity that the states enjoyed prior to the formation of the Union. *See Alden v. Maine*, 527 U.S. 706, 724 (1999); *see also Sossamon v. Texas*, 563 U.S. 277, 284 (2011). The preeminent purpose of state sovereign immunity is "to accord states the dignity that is consistent with their status as sovereign entities[.]" *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002).

Thus, states generally enjoy immunity from suits brought in federal court by their own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 3 (1890); *see also Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). In other words, under the Eleventh Amendment, a private individual is barred from bringing a suit against a state in federal court to recover damages, unless the state consents or there is an exception to sovereign immunity. *See Coleman v. Court of Appeals of Md.*, 556 U.S. 30, 35 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense."); *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States.") (internal quotation marks and citation omitted); *Edelman v. Jordan*, 415 U.S. 651 (1974).

In addition, absent waiver or a valid congressional abrogation of sovereign immunity, sovereign immunity also bars suit against an instrumentality of a state, sometimes referred to as an "arm of the state." *See Pennhurst*, 465 U.S. at 101-02 ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Moreover, claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity, because a suit against the state actor is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

The Fourth Circuit has noted three exceptions to the Eleventh Amendment's prohibition of

11

suits against a state or an arm of the state. In *Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244 (4th Cir. 2012), the Court said, *id.* at 249 (internal quotations omitted):

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) . . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) . . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.,* 535 U.S. 613, 618 (2002).

The State of Maryland has not waived immunity for claims brought pursuant to § 1983. Nor do the exceptions outlined above apply here.

Accordingly, the State of Maryland is immune from suit and shall be dismissed. And, Foxwell is also immune from suit for actions taken in his official capacity.

As to actions taken in Foxwell's individual capacity, the Complaint does not allege any individual acts or omissions on his part. In any event, plaintiff's claim, as outlined below, fails.

**2. The Claim**

To be sure, inmates retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974) and *Cruz v. Beto*, 405 U.S. 319 (1972) (per curiam)). Therefore, prisoners must be afforded "reasonable" opportunities to practice their religion. *Cruz*, 405 U.S. at 322. This includes the "right to a diet consistent with [the inmate's] . . . religious scruples." *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003). A prison official violates this right if he intentionally, and without adequate justification, denies an inmate a diet that is religiously mandated. *Lovelace v. Lee*, 472 F.3d 124, 199 (4th Cir. 2006).

However, only intentional conduct is actionable under the Free Exercise Clause of the First Amendment. *Lovelace*, 472 F.3d at 201. The Fourth Circuit has held that "negligent acts by

officials causing unintended denials of religious rights do not violate the Free Exercise Clause." *Id.* Therefore, a plaintiff "must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983." *Id.* Similarly, an official's negligent act does not implicate the Due Process Clause. *Id.*

Here, plaintiff failed to assert that defendants engaged in a conscious or intentional interference with his right to practice his religion. First, plaintiff made no effort either to inform ECI staff of his religious belief that required him to abstain from eating pork, or to request a religious diet based upon that belief. Second, there is not a shred of evidence of intentional conduct on the part of defendants.

Defendants do not dispute that "sausage that contained 2% or less dehydrated pork stock" was served to ECI inmates on October 25, 2017. *See* ECF 15-1 at 3. But, they have amply demonstrated that ECI staff ordered and intended to purchase turkey maple sausage links from a commercial food vendor. ECF 15-2 at 2-4. Moreover, the vendor was explicitly informed prior to sale that food items may not contain any pork or pork by-products, in accordance with DPSCS policy. ECF 15-3, ¶6. ECI's dietary manager also stated that ECI relies on the commercial food vendors to comply with this policy with respect to the inmate food items supplied to ECI. *Id.* Unexpectedly, and contrary to the purchase order that had been placed, the vendor provided sausage with pork in it.

Section 1983 of 42 U.S.C. incorporates a causation requirement. *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). In response to defendants' evidence, plaintiff must show that the defendants' policies are the cause of the alleged burden on their exercise of religion. *Wright v. Lassiter*, 921 F.3d 413, 419 (4th Cir. 2019). In other words, he must show that his injuries "would

13

not have occurred but for defendant's conduct." *Id.* (citing *Burrage v. United States*, 571 U.S. 204, 214 (2014)). This he has not done.

At most, a defendant was perhaps negligent for failing to check the food labels upon receipt, although such an omission would seem like a stretch. The fault here was clearly with the vendor. In any event, Foxwell sought to correct any such error in the future by advising staff, going forward, "to check labels prior to serving." *See* ECF 15-2 at 5.

In sum, there is no dispute of material fact. The evidence, when viewed in the light most favorable to plaintiff, shows that no First Amendment violation occurred. *See Johnson-Bey v. Indiana Dep't of Corr.*, 668 F. Supp. 2d 1122, 1129 (N.D. Ind. 2009) (holding that a single instance of being fed pork cannot support a claim that inmates were denied their First Amendment right to freedom of religion or a claim that the food service personnel violated the Fourteenth Amendment's equal protection clause); *accord Johnson v. Varano*, No. 714 C.D. 2010, 2011 WL 10843816, at *6 (Pa. Commw. Ct. Mar. 9, 2011) (stating that "a single incident of being inadvertently served pork does not deprive [an inmate] of the right to the free exercise of his faith").

### IV. Conclusion

Suit against the State of Maryland shall be dismissed. No genuine issue as to any material fact is presented and defendant Foxwell is entitled to summary judgment.[2]

A separate Order follows.

May 24, 2019            _____/s/_____
Date            Ellen L. Hollander
           United States District Judge

---

[2] In light of the court's ruling, an analysis of defendants' remaining arguments is not necessary.

14